# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

**DAVID HOPKINS PLEMONS, JR.,**     )
                                  )
       **Plaintiff,**             )
                                    )
**v.**                                  )     **NO. 3:18-cv-00498**
                                    )     **CHIEF JUDGE CRENSHAW**
**CORE CIVIC ADMINISTRATIVE**     )
**HEADQUARTERS, et al.,**           )
                                    )
       **Defendants.**            )

## MEMORANDUM OPINION

David Hopkins Plemons, Jr., an inmate at the South Central Correctional Facility in Clifton, Tennessee, filed this *pro se* civil rights action under 42 U.S.C. § 1983 against the following defendants: Core Civic Administrative Headquarters, Warden Washburn, Chris Brums, Trousdale Turner Correctional Center, Chief Cox, Sgt. Caster, Unit Manager Oswald, Counselor Greer, Chief of Security Cleek,[1] Reclassification Coordinator Williamson, Correctional Officer Huntly, Correctional Officer Hinson, and Correctional Officer Pierce. Plaintiff also filed an application to proceed *in forma pauperis*. (Doc. No. 5.)

## I. Application to Proceed as a Pauper

The Court may authorize a prisoner to file a civil suit without prepaying the filing fee. 28 U.S.C. § 1915(a). Because it appears from Plaintiff's *in forma pauperis* application that he lacks sufficient financial resources from which to pay the full filing fee in advance, his application (Doc.

---

[1] This defendant is listed on the docket as "Chief Security Clerk," but the complaint reflects that he is an individual with the last name "Cleek." (Doc. No. 1 at 1–3.) Thus, in the Order accompanying this Memorandum Opinion, the Clerk will be directed to update the docket to reflect that this defendant's last name is "Cleek."

No. 5) will be granted. Plaintiff must nonetheless pay the $350.00 filing fee, so the fee will be assessed as directed in the accompanying Order. 28 U.S.C. § 1915(b)(1).

## II.     Initial Review

Under the screening requirements of the Prison Litigation Reform Act ("PLRA"), the Court must conduct an initial review and dismiss the complaint if it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. §§ 1915A, 1915(e)(2)(B); 42 U.S.C. § 1997e(c)(1). The Court must also construe a *pro se* complaint liberally, United States v. Smotherman, 838 F.3d 736, 739 (6th Cir. 2016) (citing Erickson v. Pardus, 551 U.S. 89, 94 (2007)), and accept the plaintiff's factual allegations as true unless they are entirely without credibility. See Thomas v. Eby, 481 F.3d 434, 437 (6th Cir. 2007) (citing Denton v. Hernandez, 504 U.S. 25, 33 (1992)).

### A.     Factual Allegations

Plaintiff alleges that, prior to November 2, 2017, the news media and Tennessee Bureau of Investigation were investigating activity by the Crips gang at Trousdale Turner Correctional Center ("TTCC"), including whether gang members were extorting inmates using "a cell phone [and] video footage." (Doc. No. 1 at 15.) According to Plaintiff, CoreCivic Administrative Headquarters were aware of this investigation, and Tennessee Department of Correction ("TDOC") Liaison Chris Brums wanted to cover up as much Crips activity as possible. (Id.) Plaintiff alleges that his family called TTCC to complain about these conditions. (Id.) Because of his family's actions, Plaintiff alleges, TDOC Liaison Brums allowed Crips gang members to beat Plaintiff, resulting in extreme bruising. (Id. at 10, 15.) Plaintiff alleges that members of the CoreCivic administration retaliated against inmates by "notify[ing] certain gang associations to carry out their cruel [and] unusual punishment." (Id. at 15.)

Plaintiff alleges that he sought protective custody status on November 2 due to the beating. (<u>Id.</u> at 2, 5, 10.) Sgt. Caster completed an incident report, in which Plaintiff identified each inmate involved in the incident and gave details about how the Crips gang operated within the TTCC. (<u>Id.</u> at 7, 10, 15, 16.) Plaintiff requested medical assistance from Caster, and Caster refused. (<u>Id.</u> at 10, 16.) TDOC Liaison Brums read the incident report and instructed Caster to take Plaintiff to A-B pod cell 102 (<u>id.</u> at 16), where Plaintiff would remain during an investigation into his request for protective custody status (<u>id.</u> at 10). Plaintiff requested medical care from Brums, who responded that medical staff would visit Plaintiff in his cell, but Plaintiff did not receive care. (<u>Id.</u> at 16.)

Plaintiff also alleges that TDOC policy provides that inmates subject to a protective custody investigation "are to be housed by themselves." (<u>Id.</u> at 11, 14.) On November 3, Plaintiff alleges, TDOC Liaison Brums and TTCC administration assigned "Andrews," a suspected gang member on "close custody" status, to Plaintiff's cell. (<u>Id.</u> at 2, 11.) Plaintiff asserts that Brums and TTCC administration did this to punish Plaintiff for filing the incident report and seeking protective custody status. (<u>Id.</u> at 5, 11, 15, 17.) Plaintiff also asserts that Warden Washburn knew Brums placed Andrews in Plaintiff's cell to punish him for these reasons. (<u>Id.</u> at 7.)

According to Plaintiff, TDOC Liaison Chris Brums told Andrews that Plaintiff completed an incident report regarding the Crips gang. (<u>Id.</u> at 5, 16, 17.) Andrews made "serious threats" to Plaintiff's safety and conveyed that he had a "fresh sentence" and wanted to "make rank" within the gang. (<u>Id.</u> at 2, 5.) Andrews also conveyed that he would kill Plaintiff if gang leaders instructed him to do so. (<u>Id.</u> at 11.) Andrews said he would "report back" to the TTCC administration that placed him in Plaintiff's cell. (<u>Id.</u> at 5.) Andrews beat and stomped on Plaintiff daily. (<u>Id.</u> at 16.) Plaintiff alleges that, during an attack by Andrews one morning in November 2017, Andrews yelled that he was "going to kill this white boy." (<u>Id.</u> at 9.) As a result of this attack, Plaintiff

sustained a bloody nose as well as bruising on his ribs, chest, and back. (Id.) Plaintiff requested medical treatment due to Andrews' beatings multiple times. (Id. at 14.) He alleges that, the day after a request for medical treatment, correctional officers would inform Andrews of Plaintiff's request and Andrews would beat Plaintiff again in front of the correctional officers. (Id. at 17.)

Correctional Officer ("CO") Ray witnessed Andrews threaten Plaintiff, take Plaintiff's food trays, and slap and stomp on Plaintiff on several occasions, including on November 10, 2017. (Id. at 7, 11.) Plaintiff told CO Ray about Andrews' alleged purpose in his cell. (Id. at 9, 11.) During several of the beatings, CO Ray yelled at Andrews to stop through the cell door, but Andrews did not comply. (Id. at 14.) CO Ray made a report of the "many times" Andrews caused Plaintiff pain (id. at 9, 11), and conveyed those events to TDOC Liaison Brums and Chief of Security Cleek. (Id. at 7, 14.) Plaintiff also told Chief Cox about Andrews' alleged purpose in his cell, and she responded that Brums and Warden Washburn requested that neither Andrews nor Plaintiff be moved. (Id. at 11.) On November 6, Chief Cox walked away after she witnessed Andrews slap Plaintiff. (Id.) Plaintiff informed Cleek that Andrews was beating him daily. (Id. at 14.) Plaintiff alleges that he sent notes out of his cell asking for help, but no one took action in response. (Id. at 9.) Plaintiff asserts that correctional officers ignored his requests for help because they wanted him to return to the main compound. (Id. at 17.)

On November 20, 2017, Plaintiff participated in a protective custody hearing and reported the circumstances of his housing with Andrews. (Id. at 2, 16.) Plaintiff alleges that he had visible bruises on his face from beatings by Andrews. (Id. at 16.) Counselor Greer, Chief of Security Cleek, and Reclassification Coordinator Williamson were present at the hearing. (Id.) Plaintiff told Greer he had difficulty breathing and thought his ribs were broken, and Greer told Plaintiff to request a sick call. (Id.) Plaintiff later did so, but did not receive any treatment. (Id.) Plaintiff makes

conflicting allegations regarding the hearing: he alleges that Sgt. Caster lost the incident report and could not present it (id. at 7); later, Plaintiff alleges that Williamson read the incident report, and Unit Manager Oswald recommended that Plaintiff be placed in protective custody (id. at 16).

At the hearing, TDOC Liaison Brums said that he directed CO Ray, Chief of Security Cleek, and Chief Cox to place Andrews in Plaintiff's cell "for the sole purpose" of interfering with Plaintiff's well-being until he "stop[ped] this protective custody nonsense." (Id. at 2.) Plaintiff alleges that Brums specifically stated that he placed Andrews in Plaintiff's cell to take Plaintiff's food trays and commissary items, listen to Plaintiff's phone calls, and follow Plaintiff to the recreation cage. (Id.) Brums told Plaintiff and Chief Cox that he knew Andrews was a suspected gang member. (Id. at 7.) Brums stated he would not move Andrews or Plaintiff until Plaintiff returned to the "main compound." (Id. at 2.)

Plaintiff alleges that, from November 20 to December 28, 2017, he was housed in the "Alpha-Alpha unit," and that the TTCC grievance committee did not address the substance of his grievance. (Id. at 14.) Plaintiff alleges that Chief of Security Cleek signed a response to a grievance during that time that did not address Plaintiff's concerns. (Id.) At some point after Plaintiff returned to the main compound, the Crips gang beat him again. (Id. at 17.) On December 28, 2017, Plaintiff was transferred from TTCC to the annex at South Central Correctional Facility. (Id. at 9.)

## B.    Standard of Review

To determine whether a prisoner's complaint "fails to state a claim on which relief may be granted" under the PLRA's screening requirements, the Court applies the same standard as under Rule 12(b)(6) of the Federal Rules of Civil Procedure. Hill v. Lappin, 630 F.3d 468, 470-71 (6th Cir. 2010). The Court therefore accepts "all well-pleaded allegations in the complaint as true, [and] 'consider[s] the factual allegations in [the] complaint to determine if they plausibly suggest an

entitlement to relief.'" Williams v. Curtin, 631 F.3d 380, 383 (6th Cir. 2011) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 681 (2009)). An assumption of truth does not, however, extend to allegations that consist of legal conclusions or "'naked assertion[s]' devoid of 'further factual enhancement.'" Iqbal, 556 U.S. at 678 (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 557 (2007)). A *pro se* pleading must be liberally construed and "held to less stringent standards than formal pleadings drafted by lawyers." Erickson, 551 U.S. at 94 (citing Estelle v. Gamble, 429 U.S. 97, 106 (1976)).

### C.    Discussion

"To prevail on a cause of action under § 1983, a plaintiff must prove '(1) the deprivation of a right secured by the Constitution or laws of the United States (2) caused by a person acting under the color of state law.'" Winkler v. Madison Cty., 893 F.3d 877, 890 (6th Cir. 2018) (quoting Shadrick v. Hopkins Cty., 805 F.3d 724, 736 (6th Cir. 2015)).

### 1. Improper Parties under 42 U.S.C. § 1983

Plaintiff names Trousdale Turner Correctional Center as a defendant in this action, but the TTCC is a building, "not a 'person' or legal entity subject to suit under 42 U.S.C. § 1983." McIntosh v. Camp Brighton, No. 14-CV-11327, 2014 WL 1584173, at *2 (E.D. Mich. Apr. 21, 2014) (collecting cases establishing that prison facilities are inappropriate defendants under § 1983). Accordingly, the TTCC will be dismissed as a party.

Likewise, "Core Civic Administrative Headquarters" is an improper party because a headquarters is a location or building of some kind, and therefore is not a "person" under Section 1983. Nonetheless, the Court may liberally construe Plaintiff's reference to "Core Civic Administrative Headquarters" an attempt to name CoreCivic itself as a defendant. The Court takes judicial notice that CoreCivic is the private entity contracted to manage TTCC.[2] Private entities

---

[2] "The court may judicially notice a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." United States v. Ferguson, 681

that perform the "'traditional state function' of operating a prison" act "under color of state law" for purpose of liability under § 1983. Street v. Corr. Corp. of Am., 102 F.3d 810, 814 (6th Cir. 1996) (citing Hicks v. Frey, 992 F.2d 1450, 1458 (6th Cir. 1993)). As a private government contractor, CoreCivic is subject to liability under § 1983 if Plaintiff demonstrates that his "'constitutional rights were violated and that a policy or custom' of [CoreCivic] 'was the moving force behind the deprivation of [his] rights.'" Savoie v. Martin, 673 F.3d 488, 494 (6th Cir. 2012) (quoting Miller v. Sanilac Cty., 606 F.3d 240, 255 (6th Cir. 2010)).

Here, liberally construing the complaint, it appears that Plaintiff may identify one alleged CoreCivic policy or custom; even so, he has not stated a claim on that basis. Plaintiff alleges that members of the CoreCivic administration retaliate against inmates by "notify[ing] certain gang associations to carry out their cruel [and] unusual punishment." (Doc. No. 1 at 15.) This allegation of an organization-wide practice of retaliating against inmates in this manner does not state a claim for relief because it is "conclusory"—that is, Plaintiff has not alleged specific facts to support it. See Iqbal, 556 U.S. at 678; see also Harbin-Bey v. Rutter, 420 F.3d 571, 580 (6th Cir. 2005) (quoting Gutierrez v. Lynch, 826 F.2d 1534, 1538–39 (6th Cir. 1987)) ("[C]onclusory allegations of retaliatory motive 'unsupported by material facts will not be sufficient to state . . . a claim under § 1983.'"). Plaintiff therefore fails to state a claim against CoreCivic.

### 2. Failure to Protect against Initial Attack

Plaintiff alleges that, prior to November 2, 2017, TDOC Liaison Chris Brums allowed gang members to attack Plaintiff because Plaintiff's family called TTCC to complain about gang activity at the facility. The Eighth Amendment protects prisoners from "cruel and unusual punishment,"

---

F.3d 826, 834 (6th Cir. 2012) (quoting Fed. R. Evid. 201(b)). The Tennessee Department of Correction website reflects that CoreCivic is a private entity that manages TTCC. *Trousdale Turner Correctional Center*, TENNESSEE DEPARTMENT OF CORRECTION, https://www.tn.gov/correction/sp/state-prison-list/trousdale-turner-correctional-center (last visited Aug. 21, 2018).

Farmer v. Brennan, 511 U.S. 825, 832 (1994), including the right be free "from violence at the hands of other prisoners." Bishop v. Hackel, 636 F.3d 757, 766 (6th Cir. 2011) (quoting Farmer, 511 U.S. at 833). A failure-to-protect claim has an objective and subjective component. Id. at 766–67 (quoting Farmer, 511 U.S. at 833). For the objective component, a plaintiff must demonstrate that "he is incarcerated under conditions posing a substantial risk of serious harm." Id. at 766 (quoting Farmer, 511 U.S. at 833). For the subjective component, the plaintiff must show that a prison official "acted with 'deliberate indifference' to inmate health or safety," id. (quoting Farmer, 511 U.S. at 834), meaning the official "kn[ew] of and disregard[ed]" the excessive risk of harm. Id. at 766–67 (quoting Farmer, 511 U.S. at 837).

Accepting Plaintiff's allegations as true, the Court concludes that Plaintiff has stated a claim against Defendant Brums for failing to protect him from the beating by gang members prior to November 2, 2017. Plaintiff alleges that it was common for gang members to extort inmates during that time, and that he sustained extreme bruising as a result of the attack. These allegations reflect that Plaintiff faced a risk of harm sufficiently serious to satisfy the objective component of a failure-to-protect claim. Additionally, liberally construing the complaint, Plaintiff alleges that Brums knew about the substantial risk of harm facing Plaintiff because Brums was trying to cover up gang activity at TTCC during that period, but disregarded that risk by allowing the beating to occur. Plaintiff therefore satisfies the subjective component as well, and this failure-to-protect claim against Defendant Brums will not be dismissed at this juncture.

### 3. Denial of Adequate Medical Care after Initial Attack

Plaintiff alleges that, as he was reporting the beating on November 2, 2017, he requested medical assistance from Sgt. Caster and TDOC Liaison Brums. Caster refused, and Brums told Plaintiff that medical staff would come to his cell, but Plaintiff did not receive any care. The Eighth

Amendment establishes the right for prisoners to receive adequate medical care. Shadrick, 805 F.3d at 737–38. Thus, "deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983." Darrah v. Krishner, 865 F.3d 361, 367 (6th Cir. 2017) (quoting Estelle, 429 U.S. at 105). "A constitutional claim for deliberate indifference contains both an objective and a subjective component. The objective component requires a plaintiff to show the existence of a 'sufficiently serious' medical need." Dominguez v. Corr. Med. Servs., 555 F.3d 543, 550 (6th Cir. 2009) (quoting Farmer, 511 U.S. at 834). "The subjective component, in contrast, requires a plaintiff to 'allege facts which, if true, would show that the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk.'" Id. (quoting Comstock v. McCrary, 273 F.3d 693, 703 (6th Cir. 2001)).

Here, Plaintiff provides little detail about the severity of the injuries he sustained from the alleged gang attack prior to November 2, 2017. Nonetheless, for the purpose of initial review, the Court concludes that the alleged extreme bruising was sufficiently serious to satisfy the objective component. Further, Defendants Caster and Brums were aware of his medical needs because Plaintiff asked them for treatment on November 2. And they deliberately disregarded Plaintiff's medical needs—in Caster's case, by allegedly refusing treatment (Doc. No. 1 at 10); and in Brums' case, by allegedly telling Plaintiff he would be visited by medical staff who never arrived (id. at 16). Accordingly, the Court concludes that Plaintiff has stated a claim against Caster and Brums for deliberate indifference to his serious medical needs.

### 4. Retaliatory Placement in Cell with Suspected Gang Member

Plaintiff alleges that, on November 2, 2017, he sought protective custody status and completed an incident report on the beating with Sgt. Caster. Defendant Brums assigned him to

A-B pod cell 102 for the duration of an investigation into Plaintiff's protective custody request. According to Plaintiff, the next day, Brums and the TTCC administration assigned a suspected gang member named "Andrews" to Plaintiff's cell to punish Plaintiff for filing the incident report and requesting protective custody status. During the next few weeks, Plaintiff alleges, Andrews repeatedly threatened, beat, and harassed Plaintiff.

The First Amendment protects a prisoner's right to be free from retaliation for engaging in constitutionally protected conduct. Thaddeus-X v. Blatter, 175 F.3d 378, 394 (6th Cir. 1999). To state a First Amendment retaliation claim, a plaintiff must satisfy the following three elements:

> (1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two—that is, the adverse action was motivated at least in part by the plaintiff's protected conduct.

Maben v. Thelen, 887 F.3d 252, 264 (6th Cir. 2018) (quoting Thaddeus-X, 175 F.3d at 394).

First, for the purpose of initial review, the Court concludes that Plaintiff's alleged activity—reporting gang operations and seeking protection from unsafe living conditions—constituted protected conduct. See Maben, 887 F.3d at 265 ("Nothing in the First Amendment itself suggests that the right to petition for redress of grievances only attaches when the petitioning takes a specific form.") (citations omitted). As to the second element, cell assignments "typically do not amount to an adverse action" because they "are a normal part of prison life." LaFountain v. Harry, 716 F.3d 944, 949 (6th Cir. 2013). In this case, however, Plaintiff alleges that Andrews was assigned to his cell with explicit instruction from Brums to threaten, beat, and generally harass Plaintiff. Taking these allegations as true, as required at this stage in the proceedings, the Court concludes that these circumstances would "deter a person of ordinary firmness" from continuing to engage in the alleged protected conduct. Maben, 887 F.3d at 264. Finally, Plaintiff's allegations

that Brums took this adverse action in an effort to force Plaintiff to stop seeking protective custody satisfies the third element. Accordingly, Plaintiff has stated a retaliation claim against Defendant Brums.

Plaintiff also alleges that Warden Washburn was aware of Andrews' ongoing harassment, but failed to take any corrective action after being notified of the problem. "Although defendants are not responsible for adverse actions that they do not cause, they are responsible for 'those consequences that inextricably follow from [their] alleged retaliatory conduct[.]'" LaFountain, 716 F.3d at 949 (quoting Siggers-El v. Barlow, 412 F.3d 693, 702 (6th Cir. 2005)). Here, Plaintiff specifically alleges that Plaintiff told Chief Cox about Andrews' purpose in his cell, and she responded that neither Brums nor Washburn wanted Plaintiff and Andrews to be separated. Washburn's alleged refusal to separate Andrews and Plaintiff, while being aware that Andrews was harassing Plaintiff as punishment for engaging in protected conduct, satisfies the causation element of a retaliation claim for the purpose of initial review. See id. (finding that a prisoner-plaintiff's cellmate's threat of violence was a "foreseeable consequence" of assigning them to the same cell and refusing to separate them, where the plaintiff alleged that the defendants knew in advance that the plaintiff would either need to fight or be assaulted by his cellmate). The Court therefore concludes that Plaintiff has stated a retaliation claim against Defendant Washburn.

Plaintiff has not, however, stated a retaliation claim against any other defendants. Plaintiff alleges that "correctional officers" refused or ignored his requests for help while he was housed with Andrews because they wanted him to return to the compound. He also alleges that, after he wrote letters regarding Andrews' harassment or requested medical treatment, "correctional officers" would inform Andrews of Plaintiff's communications and Andrews would beat Plaintiff again in front of the officers. Importantly, Plaintiff does not identify the particular correctional

officers who engaged in this alleged behavior. Even under the liberal construction afforded to *pro se* plaintiffs, the Court "is not required to accept non-specific factual allegations and inferences," and a plaintiff "must allege that the defendants were personally involved in the alleged deprivation of federal rights." Frazier v. Michigan, 41 F. App'x 762, 764 (6th Cir. 2002) (citations omitted) (affirming dismissal of a *pro se* prisoner's complaint for failure to state a claim where the plaintiff "failed to allege with any degree of specificity which of the named defendants were personally involved in or responsible for each of the alleged violations of his federal rights").

As to Defendants Greer, Cleek, and Williamson, Plaintiff alleges they were present at the protective custody hearing on November 20, where Defendant Brums explicitly stated that he assigned Andrews to Plaintiff's cell to interfere with his wellbeing until he stopped seeking protective custody. Thus, it was at that time that these three defendants were aware of Brums's alleged retaliatory motive for Plaintiff's cell placement. After the hearing, however, it appears that Plaintiff no longer shared a cell with Andrews. Thus, Plaintiff has not alleged that Greer, Cleek, or Williamson took any adverse action against Plaintiff, and Plaintiff fails to allege a retaliatory motive by any specific defendants other than are Brums and Washburn. Plaintiff therefore fails to state a retaliation claim against any other defendants.

### 5. Failure to Protect and Inadequate Care Awaiting the Hearing

Plaintiff alleges that Andrews subjected him to ongoing harassment and beatings while they were housed together. Chief Cox witnessed Andrews slap Plaintiff and walked away. Plaintiff informed Chief Cox and Chief of Security Cleek of Andrews' activities in his cell, but they did not take any action to prevent the attacks from continuing. According to Plaintiff, he also requested medical treatment for injuries caused by Andrews' attacks on multiple occasions.[3]

---

[3] Plaintiff also alleges that CO Ray witnessed Andrews' alleged ongoing harassment, but Plaintiff did not name Ray as a defendant. The complaint does not reflect that Plaintiff's failure to name Ray as a defendant was due to mistake,

As stated above, a prisoner may bring a claim under the Eighth Amendment for failure to protect him from violence by another inmate, Bishop, 636 F.3d at 766, or for failure to receive adequate medical care, Shadrick, 805 F.3d at 737–38. To state a failure-to-protect claim, a plaintiff must allege that his conditions of confinement presented an objectively and substantially serious risk of harm, and that a prison official subjectively "kn[ew] of and disregard[ed]" that risk. Id. at 766–67 (quoting Farmer, 511 U.S. at 837). Similarly, to state a claim for constitutionally inadequate medical care, a plaintiff must allege that he had an objectively sufficiently serious medical need, and that a prison official "'subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk.'" Dominguez, 555 F.3d at 550 (quoting Comstock, 273 F.3d at 703).

Here, Plaintiff alleges that his cellmate subjected him ongoing threats and beatings, and that Defendants Cox and Cleek knew about it but did not intervene. Accordingly, at this juncture, the Court concludes that Plaintiff has stated a claim against Cox and Cleek for failing to protect him from attacks by Andrews. Additionally, for the purpose of initial review, the Court concludes that the alleged injuries Plaintiff sustained from these beatings—a bloody nose and bruising across his body—were objectively sufficiently serious, and that Cox and Cleek disregarded these serious medical needs by refusing Plaintiff's repeated requests for medical treatment. The Court therefore concludes that Plaintiff has also stated a claim against Cox and Cleek for deliberate indifference to his serious medical needs.

### 6. Inadequate Medical Care Following the Protective Custody Hearing

Plaintiff alleges that he participated in a protective custody hearing on November 20, 2017. At the hearing, Plaintiff had visible bruises on his face, and he informed Counselor Greer that he

---

as Plaintiff provides two lists of defendants (Doc. No. 1 at 1, 3), and Ray is not included on either of them. Thus, the Court will not consider any potential claims against CO Ray in the complaint.

had difficulty breathing and suspected broken ribs. Greer's only alleged response to Plaintiff's injuries was to tell Plaintiff to request a sick call. Plaintiff later followed this instruction, but did not receive any care whatsoever. Based on the standards set forth above, the Court concludes that the Plaintiff's alleged injuries at the protective custody hearing were objectively sufficiently serious, and that Defendant Greer knew about these injuries but deliberately disregarded them. Thus, for the purpose of initial review, the Court concludes that Plaintiff has stated a claim for deliberate indifference to serious medical needs against Greer.

### 7. Dismissal of Remaining Claims and Defendants

Plaintiff's remaining allegations do not state a claim for relief. Plaintiff asserts that assigning another inmate to his cell violated a TDOC policy providing that inmates subject to a protective custody investigation "are to be housed by themselves." (Doc. No. 1 at 11.) Even taking Plaintiff's allegation as true, however, the failure to follow internal policy is not a constitutional violation on its own. Winkler, 893 F.3d at 891–92 (citations omitted). Plaintiff raises this claim under the Equal Protection Clause of the Fourteenth Amendment as well, arguing that the defendants treated him differently than other inmates undergoing a protective custody investigation by not applying the policy to him. (Doc. No. 1 at 14.) But this assertion also fails to state a claim, as "[t]he Equal Protection Clause prohibits states from 'mak[ing] distinctions which either burden a fundamental right, target a suspect class, or intentionally treat one differently from others similarly situated without any rational basis for the difference.'" Coleman v. Governor of Michigan, 413 F. App'x 866, 877 (6th Cir. 2011) (quoting Radvansky v. City of Olmsted Falls, 395 F.3d 291, 312 (6th Cir. 2005)). Plaintiff does not adequately allege that he was subject to any of these distinctions here. See Radvansky, 395 F.3d at 312 (quoting Bass v. Robinson, 167 F.3d 1041, 1050 (6th Cir. 1999)) ("Inasmuch as Plaintiff merely alleged that he was treated unfairly as

an individual as Defendants' action, his equal protection claim [is] properly dismissed.") Accordingly, Plaintiff fails to state an Equal Protection claim.

To the extent that Plaintiff asserts any of the defendants should be subject to liability based on their positions as managers or supervisors, that assertion is without merit. The law is clearly established that "Section 1983 liability must be premised on more than mere respondeat superior, the right to control one's employees." Everson v. Leis, 556 F.3d 484, 496 (6th Cir. 2009) (citing Shehee v. Luttrell, 199 F.3d 295, 300 (6th Cir. 1999)). Thus, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." Iqbal, 556 U.S. at 676. Here, Plaintiff names "Unit Manager Oswald," "Senior [Correctional Officer] Huntly," and "Senior [Correctional Officer] Hinson" as defendants (Doc. No. 1 at 3), but does not allege that they were personally responsible for any unconstitutional conduct. Defendants Oswald, Huntly, and Hinson will therefore be dismissed as parties.

Plaintiff also names "Senior [Correctional Officer] Over Grievance Pierce" as a defendant, and attaches to the complaint a grievance seemingly signed by "Sgt Pierce." (Doc. No. 1 at 3, 19.) But a defendant is not subject to liability under Section 1983 for merely denying an administrative grievance or failing to act based on information contained in a grievance. Shehee, 199 F.3d at 300. Here, Plaintiff does not allege that Defendant Pierce engaged in any specific unconstitutional conduct, and so Pierce will also be dismissed.

Likewise, Plaintiff alleges that Defendant Cleek signed a grievance response that did not address his concerns. He asserts that this failure to properly consider his grievance violated his First Amendment right to "confront witnesses against [him]." (Id. at 14.) These allegations fail to state a claim because, as the Sixth Circuit has explained, "a prisoner has no constitutional right to an effective prison grievance procedure." Hursey v. Anderson, 2017 WL 3528206, at *2 (6th Cir.

Mar. 31, 2017) (citing <u>Argue v. Hofmeyer</u>, 80 F. App'x 427, 430 (6th Cir. 2003)). Accordingly, the Court will dismiss Plaintiff's grievance-related claim against Defendant Cleek, as well as any other general claims about the handling of Plaintiff's grievances.

Finally, Plaintiff alleges that, at some point after he returned to the main compound following the protective custody hearing, the Crips gang beat him again. But he does not allege that any specific defendant had the subjective state of mind necessary to state a claim for failure to protect him from this attack. Plaintiff therefore fails to state a failure-to-protect claim regarding this attack.

## III. Conclusion

For these reasons, two of Plaintiff's Eighth Amendment failure-to-protect claims—one against Chris Brums for the alleged attack prior to November 2, 2017, and one against Chief Cox and Chief of Security Cleek for the alleged attacks by Plaintiff's cellmate while he was undergoing a protective custody investigation—will be referred to the Magistrate Judge for further proceedings consistent with the accompanying Order. The following three Eighth Amendment claims for deliberate indifference to serious medical needs will also be referred to the Magistrate Judge: a claim against Sgt. Caster and Brums for the alleged injuries Plaintiff sustained from the alleged attack prior to November 2, 2017; a claim against Cox and Cleek for the alleged injuries he sustained while housed with his cellmate pending a protective custody investigation; and a claim against Counselor Greer for the alleged injuries Plaintiff had at the protective custody hearing. Finally, Plaintiff's First Amendment retaliation claim against Brums and Warden Washburn will be referred as well. All other claims and defendants will be dismissed.

_____
WAVERLY D. CRENSHAW, JR.
CHIEF UNITED STATES DISTRICT JUDGE