# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| DAVID HOPKINS PLEMONS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 3:18-cv-00498 |
| ) | Judge Crenshaw / Frensley |
| CORE CIVIC ADMINISTRATIVE ) | |
| HEADQUARTERS, et al., ) | |
| ) | |
| Defendants. ) | |

## REPORT AND RECOMMENDATION

### I. Introduction and Background

This matter is before the Court upon two Motions for Summary Judgment: the first, filed by Defendant Brun;[1] and the second, filed by Defendants' Washburn and Greer. Docket Nos. 81, 85.[2]

Plaintiff filed this pro se action pursuant to 42 U.S.C. § 1983 alleging that Defendants violated his First and Eighth Amendment rights. Docket No. 1. Plaintiff contends that, on November 3, 2017 a suspected gang member was assigned to his cell at Trousdale Turner Correctional Complex ("Trousdale") to punish him for filing an incident report and seeking protective custody. *Id.* As pertains to the instant Defendants, Plaintiff avers that Defendants

---

[1] Christopher Brun was incorrectly named "Chris Brums" in the earlier filings.

[2] Defendants Brun, Greer, and Washburn are the only remaining Defendants in this action who have been served. Chief of Security Cox, Sargent Caster, and Chief of Security Cleek have not been served, while CoreCivic, Trousdale Turner Correctional Center, Unit Manager Oswald, Corrections Officer Williamson, Alpha Unit Huntly, Alpha Unit Hinson, and Senior Grievance person Pierce were terminated as Defendants in this matter in an Order entered August 28, 2018. *See* Docket No. 10.

Washburn and Brun knew that the suspected gang member was placed in his cell to punish him. *Id.* Plaintiff contends that he was physically and sexually assaulted and that Defendants Washburn and Brun failed to protect him from being attacked and failed to place him in protective custody or reassign his cell. *Id.* Plaintiff avers that he was rendered unconscious and that he suffered visible bruises, broken ribs, rectal bleeding, and a bloody nose as a result of being physically and sexually assaulted. *Id.* Plaintiff avers that, during a protective custody hearing, he told Defendant Greer that he had difficulty breathing and that his ribs were broken, relaying that he was being housed with a suspected gang member. *Id.* Plaintiff asserts that Defendant Greer told him to request a sick call, but that he never received any treatment. *Id.* Plaintiff sues Defendants in their official and individual capacities, seeking monetary damages. *Id.*

Along with his Motion, Defendant Brun has contemporaneously filed a supporting Memorandum of Law, the Affidavits of Defendant Brun and Lybrunca Cockrell, Plaintiff's medical records, and a Statement of Undisputed Material Facts. Docket Nos. 81-1 - 83. Plaintiff has filed a Response to Defendant Brun's Motion and a Response to Defendant Brun's Statement of Undisputed Material Facts.[3] Docket Nos. 90, 91.

As grounds for his Motion, Defendant Brun argues that Plaintiff's only relevant grievance does not raise allegations against him, and that accordingly, Plaintiff has failed to exhaust his administrative remedies as required under the Prison Litigation Reform Act. Docket Nos. 81, 82. Defendant Brun additionally argues that Plaintiff cannot sustain his claims against him because

---

[3] Plaintiff's Response to Defendant Brun's Motion and Statement of Undisputed Material Facts does not contain the requisite citations to the record; it does not, therefore, comply with the Federal and Local Rules. *See* Fed R. Civ. P. 56 and Local Rule 56.01(c).

Defendant Brun had no knowledge of any excessive risk of harm to Plaintiff, had no knowledge that Plaintiff's family had contacted the prison complaining of gang activity prior to November 2, 2017, did not allow any gang member to assault Plaintiff, was not involved in a "cover-up" of gang activity, was not involved in placing or keeping Inmate Andrews assigned to Plaintiff's cell, and had no physical contact with either inmate. *Id.* Additionally, Defendant Brun argues that Plaintiff cannot sustain his claims because there is no evidence that Plaintiff was harmed and the medical records do not document any physical injury to Plaintiff. *Id.* Defendant Brun never met Plaintiff or talked to him, and no one ever told him that Plaintiff needed medical care. *Id.* Finally, Defendant Brun argues that he affirmed the Protective Custody Panel's decision to deny protective custody status to Plaintiff for the reasons given by the Panel - that Plaintiff had failed to provide sufficient evidence justifying protective custody status. *Id.*

Plaintiff has filed a Response to Defendant Brun's Motion and a Response to Defendant Brun's Statement of Undisputed Facts. Docket Nos. 90, 90-1. Plaintiff's Responses do not contain evidence in a form required by the Federal and Local Rules; they do not respond to the grounds raised in the Motion or properly respond to each statement in the Statement of Undisputed Facts as Plaintiff's Response fails to contain the requisite citations to the record.

Plaintiff has additionally submitted a document entitled "Fed. R. Civ. P. 8(d) Pleading to be concise & direct amendment & response" (Docket No. 91) and a "response" to Defendant Brun's Affidavit (Docket No. 92-2). These "responses" are not directly responsive, but rather, contain rambling, conclusory thoughts; they likewise do not contain evidence in a form required by the Federal and Local Rules. *See id.*

Along with their Motion for Summary Judgment, Defendants Washburn and Greer have

3

contemporaneously filed a supporting Memorandum of Law, the Declarations of Defendant Washburn and Lybrunca Cockrell, Policy 501.01, Plaintiff's November 8, 2017 Grievance, and a Statement of Undisputed Material Facts. Docket Nos. 86-89.[4] Plaintiff has filed a document that the undersigned will construe as Responses to Defendants Washburn and Greer's Motion and Statement of Undisputed Material Facts.[5] Docket No. 92. Defendants Washburn and Greer have filed a Reply. Docket No. 93.

As grounds for their Motion, Defendants Washburn and Greer argue that they are entitled to summary judgment because: (1) Plaintiff has failed to exhaust his administrative remedies as required under the Prison Litigation Reform Act; (2) Plaintiff cannot establish that Defendant Washburn personally encouraged specific instances of misconduct alleged in the Complaint or in some other way directly participated in any such misconduct, nor can Plaintiff establish that Defendant Washburn played any role in connection with Plaintiff's alleged requests for protection from other inmates, such that Plaintiff cannot establish his Eighth Amendment claim against Defendant Washburn; (3) Plaintiff cannot establish an Eighth Amendment deliberate indifference claim against either Defendant Washburn or Defendant Greer because the evidence establishes that Defendant Washburn provided Plaintiff with reasonable safety at all times during his incarceration at Trousdale and Defendant Greer did not deny Plaintiff access to appropriate

---

[4] Defendant Greer filed her Declaration earlier in the proceedings. *See* Docket No. 51. Defendant Washburn also filed a Declaration at that time. *See* Docket No. 52.

[5] Plaintiff's Responses to Defendants Washburn and Greer's Motion and Statement of Undisputed Material Facts likewise do not contain evidence in a form required by the Federal and Local Rules; they do not respond to the grounds raised in the Motion or properly respond to each statement in the Statement of Undisputed Facts as Plaintiff's Response fails to contain the requisite citations to the record. *See* Local Rule 56.01(c).

4

medical treatment during his incarceration at Trousdale; (4) the evidence establishes that Plaintiff did not suffer a physical injury that was more than de minimus, as required under the Prison Litigation Reform Act in order to sustain a claim under the Eighth Amendment; and (5) Defendant Washburn did not take adverse action against Plaintiff in connection with any lawsuit or grievance that Plaintiff previously filed against him or any CoreCivic employee and Plaintiff cannot establish a prima facie case for retaliation such that summary judgment is warranted. Docket No. 85.

Plaintiff has filed a document entitled "FEDERAL RULE CIVIL PROCEDURE 56 - Plaintiff Plemons moves within this Honorable Court as to consider the following for his Summary Judgment relief against Defendants (Christopher Brun)(Russell Washburn)(Tara Greer)", which the undersigned will construe as a Response. Docket No. 92. Plaintiff's Response is a largely rambling, conclusory document that intersperses recitation of law with recitation of conclusory allegations and story-telling, much of which relates to people who are not parties to the instant action. *See id.* As noted, Plaintiff does not directly respond to the grounds raised in Defendants' Motion, nor does Plaintiff dispute Defendants' contention that he failed to exhaust his administrative remedies. *See id.* Plaintiff has additionally written his responses to Defendants Washburn and Greer's Statement of Undisputed Material Facts. Docket No. 92-1. Plaintiff's responses do not properly dispute the statements and do not contain the requisite citations to the record. *See id.*

In their Reply, Defendants Washburn and Greer argue that Plaintiff's response is "a thirty-two page brief containing rambling facts and law - much of which pertain to claims and

parties that did not survive the Court's initial screening order." Docket No. 93.[6] Defendants Washburn and Greer note that there are no citations to the record in "these thirty-two rambling pages," nor are there any citations to the record in Plaintiff's purported responses to their Statement of Undisputed Material Facts. *Id.* Defendants Washburn and Greer argue that Plaintiff's response is therefore fatally flawed and the statements contained in their Statement of Undisputed Material Facts should be deemed undisputed. *Id., citing* Fed. R. Civ. P. 56(c); Local Rules 56.01(c) and 56.01(f). Defendants Washburn and Greer additionally note that this Court has already specifically instructed Plaintiff to comply with Local Rule 56.01 in responding to Statements of Undisputed Material Facts. *Id., citing* Docket No. 27.

Defendants Washburn and Greer further reply that regardless, Plaintiff did not file grievances regarding the claims now before the Court, much less complete the three-step grievance procedure in effect at Trousdale, such that Plaintiff has failed to exhaust his administrative remedies. Docket No. 93. They note that Plaintiff, in his Response, does not argue that he exhausted his administrative remedies nor does he offer any explanation for his failure to submit any grievances regarding his claims that he was physically and sexually assaulted and denied medical treatment during his incarceration at Trousdale. *Id.* Defendants reiterate that they are further entitled to summary judgment because Plaintiff simply cannot sustain his claims against them. *Id.*

For the reasons discussed below, the undersigned finds that Plaintiff failed to exhaust his administrative remedies as required under the Prison Litigation Reform Act. The undersigned

---

[6] Defendants Washburn and Greer note also that Plaintiff's thirty-two page response is in violation of Local Rule 7.01(a)(3), which limits response memoranda to twenty-five pages. Docket No. 93, *comparing* Local Rule 7.01(a)(3) *with* Docket No. 92.

therefore recommends that Defendants' Motions for Summary Judgment (Docket Nos. 81, 85) be GRANTED and that this action be DISMISSED.

## II. Undisputed Facts[7]

### A. Affidavit of Christopher Brun

At all times relevant to the instant action, Christopher Brun was employed by the Tennessee Department of Correction ("TDOC") as the TDOC Contract Monitor of Operations at Trousdale Turner Correctional Center ("Trousdale"). Docket No. 81-1, Affidavit of Christopher Brun ("Brun Aff."), ¶¶ 2, 3.

Trousdale houses approximately 2,500 inmates. *Id.*, ¶ 4. The TDOC Contract Monitor of Operations oversees Trousdale's inmate reclassifications, inmate disciplinaries, and segregation of inmates (including protective custody segregation), as well as Trousdale's compliance with the TDOC/CoreCivic contract and Trousdale's inmate cell inspections. *Id.*

As the TDOC Contract Monitor of Operations, Defendant Brun reviews the Protective Custody Panel's recommendation regarding an inmate's placement in protective custody after the Warden has reviewed it, but does not attend or participate in protective custody panel hearings. *Id.*, ¶ 5. Defendant Brun has no authority or involvement in the process of inmate cell assignments (including cell assignments and choice of cellmates in protective custody pending investigation status); such decisions are made by CoreCivic employees at Trousdale. *Id.*, ¶ 6.

Defendant Brun had no knowledge that Plaintiff was at risk of harm at Trousdale and has no knowledge of whether Plaintiff's family contacted Trousdale to complain about gang activity

---

[7] Unless otherwise noted, the following facts are in a form required by Fed. R. Civ. P. 56 and are undisputed.

at the facility prior to November 2, 2017. *Id.*, ¶¶ 7, 10.

Defendant Brun has never been involved in or allowed gang members to assault Plaintiff, nor was he ever involved in a "cover-up" of gang activity at Trousdale. *Id.*, ¶¶ 8, 9.

Defendant Brun did not order that inmate Lyle W. Andrews #00306389 be celled with Plaintiff or that Plaintiff remain celled with Inmate Andrews. *Id.*, ¶ 11.

To the best of his knowledge, Defendant Brun has never met or spoken with Plaintiff or Inmate Andrews, nor has Defendant Brun had any encounters with them. *Id.*, ¶ 12. Defendant Brun was not present at Plaintiff's November 2017 protective custody hearing. *Id.*, ¶ 13.

No one ever told Defendant Brun that Plaintiff was threatened or injured by Inmate Andrews, and Defendant Brun never saw either. *Id.,* ¶ 14. Defendant Brun never witnessed Plaintiff being in need of medical care, nor has Defendant Brun ever denied Plaintiff medical care. *Id.*, ¶ 15.

On November 15, 2017, the Protective Services Panel recommended that Plaintiff's request for protective custody be denied, as Plaintiff failed to provide enough evidence to justify protective custody. *Id.*, ¶ 16. As TDOC Contract Monitor, Defendant Brun approved the Panel's recommendation for the reasons provided by the Panel. *Id.; see also, Id.*, ¶ 17. Defendant Brun did not approve the Panel's recommendation for any retaliatory motive as he did not have any retaliatory motive against Plaintiff. *Id.*, ¶ 17.

Plaintiff was transferred to another cell on November 17, 2017. *Id.*, ¶ 19.

**B.  Declaration of Lybrunca Cockrell**

Lybrunca Cockrell is employed by CoreCivic as the Grievance Coordinator at Trousdale. Docket No. 88, Declaration of Lybrunca Cockrell ("Cockrell Dec."), ¶ 2. CoreCivic's

administrative grievance system enables inmates at Trousdale to seek redress for issues relating to the conditions of their confinement. *Id.*, ¶ 3.

Pursuant to Policy 501.01, Inmate Grievance Procedures, the processing of a standard inmate grievance at Trousdale proceeds as follows:

> <u>First Level</u>: An inmate must file a grievance using CR-1394 within seven calendar days of the occurrence or the most-recent occurrence giving rise to the grievance. The chairperson will review the grievance and log the grievance as received. The chairperson's response to the grievance will be written on the CR-1394 following the chairperson's receipt and review of the supervisor's response. The chairperson and supervisor have seven working days to complete the response, which begins on the day that the grievance begins to be processed. If the inmate accepts the response, it will be documented on CR-3148.
>
> <u>Second Level</u>: Within five calendar days of being notified of the Level One response, the inmate may appeal the response to the grievance committee and the warden. A hearing will take place within five working days of the appeal's filing. Within five working days of the hearing, the grievance committee's proposed response will be documented on CR-1393 and will be forwarded to the warden. Within seven working days of receipt, the warden will forward his or her decision to the chairperson. Within five working days of receiving the warden's response, the chairperson will allow the inmate to review the grievance materials and response. If the inmate accepts the response, the chairperson will enter the approval on the grievance.
>
> <u>Third Level</u>: An inmate may appeal the Level Two response within five calendar days of receipt of the response. The chairperson will forward one copy of the grievance and all documentation to the deputy commissioner of operations or his or her designee. The Level Three response will be sent to the chairperson for distribution within twenty-five working days of the date the appeal was received. The chairperson will enter the final decision on the grievance. This response is final and is not subject to appeal.

*Id.,* ¶ 4, *quoting* Docket No. 88-1, Policy 501.01.

Plaintiff did not submit any grievances with respect to access to medical treatment during his incarceration at Trousdale before he filed this lawsuit. *Id.*, ¶ 5. As a result, Plaintiff did not exhaust his administrative remedies with regard to his claims that Defendant Greer denied him access to medical treatment during his incarceration at Trousdale. *Id.*, ¶ 6.

Plaintiff also did not submit any grievances with respect to any alleged physical or sexual assault during his incarceration at Trousdale before he filed this lawsuit. *Id.*, ¶ 7.

Plaintiff filed only one grievance during his incarceration at Trousdale that has any bearing on his claims in this lawsuit. *Id.*, ¶ 8. On November 8, 2017, Plaintiff filed a grievance where he complained about a suspected gang member being placed in his cell and where he stated that he feared for his life as a result. *Id.*, ¶ 9, *citing* Docket No. 88-2, Plaintiff's November 8, 2017 grievance.

Plaintiff does not mention Defendant Washburn by name, nor does he contend that Defendant Washburn failed to protect him from physical or sexual assault or that Defendant Washburn assigned a suspected gang member to Plaintiff's cell in retaliation for Plaintiff allegedly reporting gang operations and seeking protection from allegedly unsafe living conditions. *Id.*, ¶ 10. As a result, Plaintiff did not exhaust his administrative remedies on his claims that Defendant Washburn failed to protect him and retaliated against him before he filed this lawsuit on May 5, 2018. *Id.*, ¶ 11.

**C. Affidavit of Lybrunca Cockrell**

Lybrunca Cockrell is employed as the Grievance Coordinator at Trousdale. Docket No. 81-2, Affidavit of Lybrunca Cockrell ("Cockrell Aff."). Plaintiff filed only one grievance during the period of May 1, 2017 to December 30, 2019. *Id.* Plaintiff filed said grievance on November

8, 2017 requesting that he be moved to a Protective Custody Unit or be moved to another prison because he was placed in a cell with an inmate who was suspected to be a member of the Cripps gang. *Id.*

**D. Declaration of Russell Washburn**

Russell Washburn is employed by CoreCivic as Warden at Trousdale. Docket No. 87, Declaration of Russell Washburn ("Washburn Dec."), ¶ 1. CoreCivic contracts with TDOC to operate Trousdale. *Id.*, ¶ 3.

Plaintiff was housed as an inmate at Trousdale from May 22, 2017 through December 29, 2017. *Id.*, ¶ 4. Plaintiff did not request that Defendant Washburn provide him with protection from other inmates prior to the events he alleges took place, and Defendant Washburn was not aware of any threats to Plaintiff's safety. *Id.,* ¶ 5. Defendant Washburn neither instructed nor encouraged CoreCivic employees or anyone else to refuse to provide Plaintiff with protection from other inmates or to assign a suspected gang member to Plaintiff's cell. *Id.*, ¶ 6.

If an inmate requested protection from other inmates, Defendant Washburn would not delay in providing protection if the inmate required such protection. *Id.*, ¶ 7.

When CoreCivic employees receive information which indicates that an inmate may be in danger from other inmates, an immediate inquiry will be made concerning the facts of the situation to determine whether the alleged threats are substantiated and whether immediate protection is needed. *Id.,* ¶ 8. CoreCivic requires an investigation into the information received because of the voluminous number of instances of inmates reporting threats from other inmates, which often are unsubstantiated. *Id.*, ¶ 9. CoreCivic policies require that employees fully and immediately document all information received regarding threats to inmates incarcerated at

11

Trousdale. *Id.*, ¶ 10.

Plaintiff's records do not contain documentation of any threats made by other inmates prior to the alleged assaults. *Id.*, ¶ 11. Plaintiff's sexual assault allegations were investigated under the Prison Rape Elimination Act, and the investigator determined that his allegations were unfounded. *Id.*, ¶ 12.

**E.  Additional Undisputed Material Facts**

Defendant Washburn did not refuse to separate Plaintiff and another inmate who allegedly was harassing Plaintiff in retaliation for Plaintiff allegedly reporting gang operations and seeking protection from allegedly unsafe living conditions. Docket No. 89, ¶ 4, *citing* Docket No. 52, ¶ 3.

Defendant Greer would not ignore any inmate's medical needs and would help an inmate secure necessary medical treatment if an inmate reported broken ribs and difficult breathing. *Id.*, ¶ 7, *citing* Docket No. 51, ¶ 3.

Plaintiff's November 8, 2017 Grievance makes no mention of, or reference to, Defendant Brun. Docket No. 83, ¶ 26, *citing* Grievance Form attached to Cockrell Aff. Plaintiff's November 8, 2017 Grievance makes no claim of injury by Inmate Andrews; rather, it states only that Plaintiff felt threatened by Inmate Andrews and would like to be transferred. *Id.*, ¶ 27, *citing id.* Plaintiff's medical records do not document any physical injury to Plaintiff. *Id.*, ¶ 28, *citing* Docket Nos. 81-3 - 81-9, Plaintiff's medical records.

Plaintiff failed to exhaust his administrative remedies on the claims he asserts in the instant action. Docket Nos. 83, 88.

## III. Law and Analysis

### A. Motion for Summary Judgment

Under Fed. R. Civ. P. 56(c), summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." A dispute is "genuine" only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986).

In order to prevail on a Motion for summary judgment, the moving party must meet the burden of proving the absence of a genuine issue as to material fact concerning an essential element of the opposing party's claim. *Celotex v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265 (1986); *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989). In determining whether the moving party has met its burden, the Court must view the evidence in the light most favorable to the nonmoving party. *Matsushita Electric Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986).

Fed. R. Civ. P. 56(c)(1) sets forth the requirement to support factual assertions as follows:

> **(c) Procedures.**
> **(1)** *Supporting Factual Positions*. A party asserting that a fact cannot be or is genuinely disputed must support that assertion by:
>
>> **(A)** citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

> **(B)** showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

## B. Local Rule 56.01(c)

With regard to responses to the requisite Statement of Undisputed Facts filed contemporaneously in support of a Motion for Summary Judgment, the Local Rule 56.01(c) provides:

> **c) Response to Statement of Facts.** Any party opposing the motion for summary judgment must respond to each fact set forth by the movant by either (i) agreeing that the fact is undisputed; (ii) agreeing that the fact is undisputed for the purpose of ruling on the motion for summary judgment only; or (iii) demonstrating that the fact is disputed. *Each disputed fact must be supported by specific citation to the record.*

## C. 42 U.S.C. § 1983

Section 1983 provides, in part, that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress...

Thus, in order to state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48, 108 S. Ct. 2250, 2254-55 (1988)*, citing Parratt v. Taylor,* 451 U.S. 527, 535, 101 S. Ct. 1908, 1913, 68 L. Ed. 2d 420 (1981) (overruled in part on other grounds, *Daniels v. Williams,*

474 U.S. 327, 330-331, 106 S. Ct. 662, 88 L. Ed. 2d 662 (1986)); *Flagg Bros., Inc. v. Brooks,* 436 U.S. 149, 155, 98 S. Ct. 1729, 1733, 56 L. Ed. 2d 185 (1978). The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power "possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *Id.* at 49, 108 S. Ct. 2255, *quoting United States v. Classic,* 313 U.S. 299, 326, 61 S. Ct. 1031, 1043, 85 L. Ed. 1368 (1941).

**D. Prison Litigation Reform Act ("PLRA"), 42 U.S.C. §1997e**

A prisoner must exhaust all available administrative remedies before filing a claim under §1983 or any other federal law. 42 U.S.C. §1997e(a). *See also, e.g., White v. McGinnis*, 131 F.3d 593, 595 (6th Cir. 1997); *Brown v. Toombs*, 139 F.3d 1102, 1104 (6th Cir. 1998); *Wyatt v. Leonard*, 193 F.3d 876, 878 (6th Cir. 1999). The Prison Litigation Reform Act of 1995 provides in pertinent part as follows:

> (a) **Applicability of Administrative Remedies**. No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a) (emphasis original).

Additionally, the filing of an initial grievance is not sufficient to satisfy the requirements of § 1997e(a). Rather, the PLRA exhaustion of prison administrative remedies requires a prisoner to pursue his prison grievance through the final level of administrative appeal. *Hartsfield v. Vidor*, 199 F.3d 305, 306 (6th Cir. 1999). In *Hartsfield*, the Sixth Circuit explicitly stated:

> Even if Plaintiff did file an initial grievance against [defendants],

15

> he was required to continue to the next step in the grievance process. . . . We have previously held that an inmate cannot simply . . . abandon the process before the completion and claim that he has exhausted his remedies. . .

When a defendant shows that a plaintiff has not "exhausted all available state administrative remedies," the only remaining question is whether Plaintiff's claims have been brought with respect to "prison conditions" as that term is used in 42 U.S.C. § 1997e(a).

The Sixth Circuit discussed the meaning of the term "prison conditions" as used in 42 U.S.C. § 1997e(a) in *Freeman v. Francis*, 196 F.3d 641 (6th Cir. 1999). In *Freeman*, Plaintiff inmate brought a lawsuit against prison officials claiming that they had used excessive force against him. The lower court had dismissed his complaint for failure to exhaust administrative remedies. On appeal, Plaintiff argued in part that he was not required to exhaust his administrative remedies because his excessive force claim did not involve a "prison condition" within the meaning of § 1997e(a). The *Freeman* Court stated in part as follows:

> The phrase "action . . . with respect to prison conditions" is not defined in § 1997e. Because the question is one of statutory construction, we must first look to the plain language of the statute. Defendants argue that the term "prison conditions" as used in 18 U.S.C. § 3626(g)(2), which was amended as part of the same legislation as § 1997e, does include claims such as excessive force because it expressly includes "effects of actions of government officials on the lives of confined persons" as well as "conditions of confinement" in defining "prison conditions." . . . It is generally recognized that when Congress uses the same language in two different places in the same statute, the words are usually read to mean the same thing in both places. . . .
>
> Moreover, reading the term "prison conditions" to include claims of excessive force finds support in the purpose and legislative history of the Act. The Act was passed to reduce frivolous prisoner lawsuits and to reduce the intervention of federal courts into the management of the nation's prison systems. A broad exhaustion requirement that includes excessive force claims effectuates this

16

> purpose and maximizes the benefits of requiring prisoners to use
> prison grievance procedures before coming to federal court.
> Prisons need to know about and address claims of excessive force
> as they would any other claim concerning prison life so that steps
> may be taken to stop problems immediately if they exist.

196 F.3d at 643-644 (footnote omitted).

The U. S. Supreme Court has also held that "§ 1997e(a)'s exhaustion requirement applies to all prisoners seeking redress for prison circumstances or occurrences." *See Porter v. Nussle*, 534 U.S. 516, 520, 122 S.Ct. 983, 986 (2002). As the *Porter* Court stated:

> Beyond doubt, Congress enacted § 1997e(a) to reduce the quantity
> and improve the quality of prisoner suits; to this purpose, Congress
> afforded corrections officials time and opportunity to address
> complaints internally before allowing the initiation of a federal
> case. In some instances, corrective action taken in response to an
> inmate's grievance might improve prison administration and satisfy
> the inmate, thereby obviating the need for litigation. . . . In other
> instances, the internal review might "filter out some frivolous
> claims." . . . And for cases ultimately brought to court, adjudication
> could be facilitated by an administrative record that clarifies the
> contours of the controversy.
>
> . . .
>
> For the reasons stated, we hold that the PLRAs exhaustion
> requirement applies to all inmate suits about prison life, whether they
> involve general circumstances or particular episodes, and whether
> they allege excessive force or some other wrong.

122 S.Ct. at 988, 992 (citations omitted, emphasis added).

### E. The Case at Bar

As an initial matter, under the reasoning of *Porter* and *Freeman*, Plaintiff's claims in the case at bar fall within the meaning of the term "prison conditions" as used in § 1997e(a). He is, therefore, required to exhaust his administrative remedies as set forth in the PLRA.

The undisputed facts establish that, pursuant to Policy 501.01, Inmate Grievance Procedures, the processing of a standard inmate grievance at Trousdale proceeds as follows:

> First Level: An inmate must file a grievance using CR-1394 within seven calendar days of the occurrence or the most-recent occurrence giving rise to the grievance. The chairperson will review the grievance and log the grievance as received. The chairperson's response to the grievance will be written on the CR-1394 following the chairperson's receipt and review of the supervisor's response. The chairperson and supervisor have seven working days to complete the response, which begins on the day that the grievance begins to be processed. If the inmate accepts the response, it will be documented on CR-3148.
>
> Second Level: Within five calendar days of being notified of the Level One response, the inmate may appeal the response to the grievance committee and the warden. A hearing will take place within five working days of the appeal's filing. Within five working days of the hearing, the grievance committee's proposed response will be documented on CR-1393 and will be forwarded to the warden. Within seven working days of receipt, the warden will forward his or her decision to the chairperson. Within five working days of receiving the warden's response, the chairperson will allow the inmate to review the grievance materials and response. If the inmate accepts the response, the chairperson will enter the approval on the grievance.
>
> Third Level: An inmate may appeal the Level Two response within five calendar days of receipt of the response. The chairperson will forward one copy of the grievance and all documentation to the deputy commissioner of operations or his or her designee. The Level Three response will be sent to the chairperson for distribution within twenty-five working days of the date the appeal was received. The chairperson will enter the final decision on the grievance. This response is final and is not subject to appeal.

Cockrell Dec..,  ¶ 4, *quoting* Docket No. 88-1, Policy 501.01.

It is undisputed that, prior to filing the instant action, Plaintiff also did not submit any grievances with respect to any alleged physical or sexual assault during his incarceration at Trousdale, and that Plaintiff did not submit any grievances with respect to access to medical treatment during his incarceration at Trousdale. *Id.*, ¶¶ 5, 7. As a result, Plaintiff did not exhaust his administrative remedies with regard to his claims that Defendant Greer denied him access to medical treatment during his incarceration at Trousdale. *Id.*, ¶ 6.

It is further undisputed that Plaintiff filed only one grievance during his incarceration at Trousdale that has any bearing on his claims in this lawsuit. *Id.*, ¶ 8. On November 8, 2017, Plaintiff filed a grievance where he complained about a suspected gang member being placed in his cell and where he stated that he feared for his life as a result. *Id.*, ¶ 9, *citing* Docket No. 88-2, Plaintiff's November 8, 2017 grievance. Plaintiff's grievance does not mention Defendant Washburn by name, nor does he contend that Defendant Washburn either failed to protect him from physical or sexual assault or assigned a suspected gang member to his cell in retaliation for Plaintiff allegedly reporting gang operations and seeking protection from allegedly unsafe living conditions. *Id.*, ¶ 10. As a result, prior to filing the instant action, Plaintiff did not exhaust his administrative remedies regarding his claims that Defendant Washburn failed to protect him and retaliated against him. *Id.*, ¶ 11.

It is additionally undisputed that Plaintiff's November 8, 2017 grievance makes no mention of, or reference to, Defendant Brun. Docket No. 83, ¶ 26, *citing* Grievance Form attached to Cockrell Aff. Moreover, Plaintiff's grievance makes no claim of injury by Inmate Andrews; rather, it states only that Plaintiff felt threatened by Inmate Andrews and would like to

19

be transferred. *Id.*, ¶ 27, *citing id.* Finally, it is undisputed that Plaintiff's medical records do not document any physical injury to Plaintiff. *Id.*, ¶ 28, *citing* Docket Nos. 81-3 - 81-9, Plaintiff's medical records.

### IV. Conclusion

For the foregoing reasons, the undersigned finds that Plaintiff failed to exhaust his administrative remedies as required under the Prison Litigation Reform Act. The undersigned therefore recommends that Defendants' Motions for Summary Judgment (Docket Nos. 81, 85) be GRANTED and that this action be DISMISSED.

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has fourteen (14) days after service of this Report and Recommendation in which to file any written objections to this Recommendation with the District Court. Any party opposing said objections shall have fourteen (14) days after service of any objections filed to this Report in which to file any response to said objections. Failure to file specific objections within fourteen (14) days of service of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. *See Thomas v. Arn,* 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

_____
JEFFERY S. FRENSLEY
United States Magistrate Judge